**CHART SUMMARIZING INFORMATION REQUIRED
BY 15 U.S.C. §§ 78u-4(b)(1) and (2), PURSUANT TO COURT'S STANDING ORDER**

*Seidman v. Cytokinetics, Inc.*, No. 3:25-cv-07923 (N.D. Cal.)

| Stmt. No. | Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| 1. | When: August 8, 2024<br><br>Where: Press release<br><br>Speakers: Defendant Robert I. Blum, Defendant Sung H. Lee, Defendant Cytokinetics (Compl. ¶76) | Participated in a Type B meeting with the U.S. Food and Drug Administration (FDA) to discuss potential strategies related to safety monitoring and risk mitigation for *aficamten* and included a review of how results from SEQUOIA-HCM and intrinsic properties of *aficamten* may inform risk mitigation. **The Company expects to propose a distinct risk mitigation approach specific to *aficamten* with the New Drug Application (NDA)** for which the rolling submission is underway. The Company is on track to complete the rolling NDA submission for *aficamten* in Q3 2024. | The statements were materially false and misleading because in context, the statements misled investors to believe that Cytokinetics expected to submit a REMS (a "distinct risk mitigation approach specific to aficamten") with their NDA, when in fact, Defendants did not expect at that time to submit a REMS as part of their initial NDA. | On the May 7, 2025 Q1 2025 earnings call with investors, Defendants admitted that Defendants decided at or around the time of their Type B meeting with the FDA, which was held well prior to the first alleged misrepresentation on August 8, 2024, not to submit a REMS with the NDA for aficamten—Defendant Blum responded "correct" when an analyst asked "is it fair to assume that you asked the FDA if you should submit the REMS? And then, based on the feedback, you concluded that it was fair not to submit the REMS program." (Compl. ¶¶65, 76, 95-98). Defendant Blum attended and participated in all FDA meetings, including the Type B meeting as admitted by Defendant Blum himself and corroborated by FE1 and FE2. (Compl. ¶¶98-99) Defendants were certainly aware of major aspects of the FDA's approval of the NDA for aficamten, including the fact that the NDA for aficamten was submitted without a REMS, given the |

1

| Stmt. No. | Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | | fate of Cytokinetics turned on the FDA's approval of the aficamten NDA and aficamten was expected to account for all of Cytokinetic's revenue, as corroborated by FE3. (Compl. ¶¶34, 103-104); On the May 7, 2025 Q1 earnings call with investors, Defendants admitted that Defendants were fully aware that they had submitted the aficamten NDA without a REMS when they drafted and issued statements to investors that the NDA for aficamten "contained a distinct risk mitigation approach specific to aficamten," and Defendants stated they were "very disciplined" in crafting the language they used to discuss what was submitted as part of the NDA for aficamten when in fact, Defendants deliberately crafted language to mislead investors to believe that Cytokinetics had submitted a REMS with their NDA for aficamten. (Compl. ¶¶91-94). Defendants knew, as corroborated by FE2 and FE3, that the FDA was likely to require a REMS for aficamten because Defendants knew that aficamten's competitor drug, mavacamten, was approved only with a REMS and that drugs with the risk profile of aficamten generally required a REMS. |

| Stmt. No. | Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | | (Compl. ¶¶38-39, 100-102) |
| 2. | When: November 7, 2024<br><br>Where: SEC Form 10-Q for third quarter 2024<br><br>Speakers: Defendant Robert I. Blum, Defendant Sung H. Lee, Defendant Cytokinetics (Compl. ¶78) | **Camzyos® was approved by FDA with a** comprehensive and mandatory **risk evaluation and mitigation strategy (REMS)**, including all or many of the elements to assure safe use (ETASU) that are contemplated in Section 505-1(f)(3) of the U.S. Food, Drug & Cosmetics Act. **Our proposed NDA as submitted to FDA contained a distinct risk mitigation approach specific to aficamten.** We believe that the **commercial prospects of aficamten will be highly dependent on** whether FDA approves aficamten with a **label and/or post-marketing conditions** that are **less onerous to prescribers and patients than the ETASU REMS applicable to Camzyos®** | The statements were materially false and misleading for multiple reasons. (1) In context, the statements misled investors to believe that Cytokinetics had submitted a REMS (a "distinct risk mitigation approach specific to aficamten") with their NDA, when in fact, Defendants had not submitted a REMS as part of their initial NDA. (2) The statements above contemplated that the submitted NDA for aficamten could be accepted with "post-marketing conditions" that could impose some burden on patients, and so misleadingly suggested that the NDA for aficamten was submitted with a REMS. | (Same as for Statement 1.) |
| 3. | When: February 27, 2025<br><br>Where: SEC Form 10-K for fourth quarter and year 2024<br><br>Speakers: Defendant Robert I. Blum, | The commercial success of aficamten will be highly dependent on differentiation of aficamten from Camzyos®. **Camzyos® was approved by FDA with a** comprehensive and mandatory **REMS**, including all or many of the elements to assure safe use (ETASU) that are contemplated in Section 505-1(f)(3) of the U.S. Food, Drug & Cosmetics Act. **Our proposed NDA as submitted to FDA contained a distinct risk mitigation approach specific to aficamten**. We believe the | The statements were materially false and misleading for multiple reasons. (1) In context, the statements misled investors to believe that Cytokinetics had submitted a REMS (a "distinct risk mitigation approach specific to aficamten") with their NDA, when in fact, Defendants had not submitted a REMS as part of their initial NDA. (2) The statements above contemplated that the submitted NDA for aficamten could be accepted with "post-marketing conditions" that could impose some | (Same as for Statement 1.) |

| Stmt. No. | Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | Defendant Sung H. Lee, Defendant Cytokinetics (Compl. ¶80) | commercial prospects of aficamten are highly dependent on whether FDA approves aficamten with a label and/or post-marketing conditions that are less challenging to prescribers and patients than the REMS applicable to Camzyos®.<br><br>We believe that our ability to successfully compete will depend on, among other things:<br>[. . .]<br>•**the imposition by FDA** or other regulatory authorities **of a REMS program that is differentiated and less burdensome** to healthcare providers, pharmacists and patients **than the REMS program to which Camzyos® is subject** | burden on patients, and so misleadingly suggested that the NDA for aficamten was submitted with a REMS.   (3) Defendants' statement that "we believe our ability to successfully compete will depend on . . . the imposition by FDA . . . of a REMS program that is differentiated" implies that the FDA will impose a REMS for aficamten, and so implies that Cytokinetics had submitted a REMS for aficamten for the FDA to consider and impose. | |
| 4. | <u>When</u>:<br>February 27, 2025<br><br><u>Where</u>:<br>Earnings call<br><br><u>Speakers</u>:<br>Defendant Robert I. Blum, Defendant Cytokinetics (Compl. ¶82) | Analyst James Condulis from Stifel asked: [W]anted to get your thoughts on if you expect mavacamten's REMS to be eased in the U. S. as well and sort of if that happens like how does that change how you sort of think about the range of scenarios for kind of what aficamten's REMS looks like?<br>Again, sort of like in that scenario, would you define differentiated REMS as still differentiated in sort of the maintenance setting as well? Or does that become more about some of the other aspects of the REMS?<br>Defendant Blum replied: | The statements were materially false and misleading because, read in context as a direct response to Condulis' question, Defendant Blum implied that there were points of differentiation between "aficamten's REMS" and "mavacamten's REMS," and so misleadingly implied that a REMS for aficamten existed and had been submitted as part of the aficamten NDA. | (Same as for Statement 1.) |

| Stmt. No. | Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | **[T]here are points of differentiation** that we continue to believe are quite meaningfully important for aficamten as are consistent with intrinsic properties. And echo frequency is one of those, but so are there several others. | | |